UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCHESTER MIDLAND CORPORATION,<br><br>              Plaintiff,<br><br>     v.<br><br>CHARLES BORDERS,<br><br>              Defendant. | No. 2:26-cv-01776-TLN-CSK<br><br>**ORDER** |

This matter is before the Court on Plaintiff Rochester Midland Corporation's ("Plaintiff" or "RMC") *Ex Parte* Motion for Temporary Restraining Order ("TRO"). (ECF No. 2.) For the reasons set forth below, Plaintiff's motion is GRANTED.

///

///

///

///

///

///

///

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The instant action arises from Defendant Charles Borders's ("Defendant") alleged misappropriation of Plaintiff's trade secrets. (*See* ECF No. 1.) Plaintiff develops, manufactures, and supplies specialty chemical products, sanitation programs, and related services to commercial and industrial customers across the United States. (ECF No. 2-1 at 2.) Plaintiff's business depends on long-term customer relationships supported by customer-specific pricing margins, customized chemical programs, standard sanitation operating procedures ("SSOPs"), sales analytics, and detailed knowledge of customer operations. (*Id.*) Plaintiff maintains this information is not public, derives independent economic value from its secrecy, and would provide a competitor with significant and unfair advantage if misused or disclosed. (*Id.*) Defendant was a trusted Account Manager and Division Manager with access to Plaintiff's highly sensitive customer-specific data. (*Id.*)

Plaintiff alleges that on April 29 and April 30, 2026, while he was still employed by Plaintiff and preceding his resignation, Defendant "secretly removed approximately 3.5 gigabytes of core proprietary information in the final days of his employment, compressed that information to obscure its contents, deleted Company records to impair traceability, and transmitted confidential materials to his personal Gmail account" without authorization or any legitimate business purpose. (*Id.*; ECF No. 1 at 5.) Approximately one month earlier, Defendant was offered and accepted a promotion to District Manager, "a leadership role reflecting [Plaintiff's] long-term reliance on him and its expectation that he would remain with the Company." (ECF No. 2-1 at 2.) Instead, on May 1, 2026, Defendant abruptly resigned effective immediately and announced he was joining one of Plaintiff's direct competitors in the specialty chemical and sanitation services market — Cherokee Chemical, Inc. ("CCI"). (*Id.* at 2, 4.) Plaintiff alleges it only learned of Defendant's misconduct through a review of his recent system activity, conducted in light of his irregular departure. (*Id.* at 2.)

Plaintiff asserts Defendant currently possesses its most sensitive pricing, SSOPs, chemical program, and sales data, and once this information is used or disclosed, it cannot be meaningfully contained. (*Id.*) Plaintiff contends Defendant's continued possession and potential use of this

2

information "poses an immediate and ongoing threat to [Plaintiff's] customer relationships, pricing integrity, and goodwill that cannot be adequately remedied after the fact." (*Id.* at 5.)  On May 11, 2026, Plaintiff filed the instant action and *ex parte* motion for TRO, seeking to enjoin Defendant and all those acting in concert with him from accessing, using, disclosing, disseminating, copying, transmitting, or otherwise misappropriating any of Plaintiff's confidential, proprietary, or trade secret information.  (ECF Nos. 1, 2.)

**II.    STANDARD OF LAW**

A TRO is an extraordinary remedy.  The purpose of a TRO is to preserve the status quo pending a fuller hearing.  *See* Fed. R. Civ. P. 65.  In general, "[t]emporary restraining orders are governed by the same standard applicable to preliminary injunctions." *Aiello v. One West Bank*, No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092, at *1 (E.D. Cal. Jan. 29, 2010) (internal citations omitted); *see also* E.D. Cal. L.R. 231(a).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).  "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Costa Mesa City Emps. Ass'n v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial."); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.").

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20.  A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *All. for the Wild Rockies v. Cottrell (Alliance)*, 632 F.3d 1127, 1135 (9th Cir. 2011).  In evaluating a plaintiff's motion for preliminary injunction, a district court

may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id*. A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. Simply put, a plaintiff must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in the plaintiff's favor in order to succeed in a request for preliminary injunction. *Id*. at 1134–35.

**III.   ANALYSIS**

The Court considers each of the *Winter* elements with respect to Plaintiff's motion.

A.   Likelihood of Success on the Merits

Plaintiff asserts it is likely to succeed on the merits of its misappropriation of trade secrets claim.[1] (ECF No. 2-1 at 6–8.) California has adopted the Uniform Trade Secrets Act ("CUTSA"). *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993), *cert. denied*, 510 U.S. 1033 (1993). CUTSA is codified at California Civil Code §§ 3426–3426.11 and "creates a statutory cause of action for the misappropriation of a trade secret." *Brescia v. Angelin*, 172 Cal. App. 4th 133, 143 (2009). Similarly, at the federal level, Congress enacted the Defend Trade Secrets Act ("DTSA") which "permits the 'owner of a trade secret that is misappropriated' to bring a civil action, [pursuant to] 18 U.S.C. § 1836(b)." *ExamWorks v. Todd Baldini*, No. 2:20-CV-00920-KJM-DB, 2020 WL 3127928, at \*5 (E.D. Cal. June 11, 2020), *vacated in part sub nom. ExamWorks, LLC v. Baldini*, 835 F. App'x 251 (9th Cir. 2020). The standards for establishing misappropriation of trade secrets under federal and California law are similar. Under both the DTSA and CUTSA, a prima facie claim for trade secret misappropriation requires the plaintiff to establish: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Mastronardi Int'l Ltd. v. SunSelect Produce (California), Inc.*, No. 1:18-cv-00737-AWI-JLT, 2019 WL 3996608, at \*9

---

[1]   Plaintiff also asserts it is likely to succeed on the merits of its breach of contract claim. (ECF No. 2-1 at 8–9.) However, because the Court finds Plaintiff is likely to succeed on the merits of its misappropriation of trade secrets claim, it need not address Plaintiff's breach of contract claim at this juncture.

4

(E.D. Cal. Aug. 23, 2019) (quoting *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018). Furthermore, both "include[ ] substantially similar definitions of 'trade secret' and 'misappropriation.'" *ExamWorks*, 2020 WL 3127928, at \*5. Given the substantial similarity between the statutory elements and definitions of the DTSA and CUTSA, the Court will analyze Plaintiff's federal and state trade secret misappropriation claims together below. *Id.*

> i.   *Trade Secret*

The DTSA and CUTSA "both define 'trade secret' as information, such as a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Bemis Co., Inc. v. Summers*, No. 2:19-cv-00344-TLN-KJN, 2019 WL 1004853, at \*3 (citing 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d)). "[W]here [an] employer has expended time and effort identifying customers with particular needs or characteristics," such information is a trade secret. *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1521 (1997). Thus, "[i]t is well-established that a customer list may constitute a protectable trade secret." *Wyndham Resort Dev. Corp. v. Bingham*, No. 2:10-cv-01556-GEB-KJM, 2010 WL 2720920, at \*5 (E.D. Cal. July 8, 2010) (quoting *Gable–Leigh, Inc. v. N. Am. Miss*, No. CV 01-01019 MMM (SHx), 2001 WL 521695, at \*15 (C.D. Cal. Apr. 13, 2001)). The Court finds both elements of the "trade secret" definition are likely met here.

First, Plaintiff adequately establishes its confidential business information constitute trade secrets. Plaintiff cites to the declaration of Plaintiff's Vice President of Corporate Development, Robert Matthews, who attests that these trade secrets include "customer pricing, margins, SSOPs, chemical lists, sales analytics, revenue and volume reports, key customer decisionmaker contact information, and outstanding order data." (ECF No. 2-2 at 2.) The Court agrees with Plaintiff that "[c]ourts routinely recognize such information as trade secrets." (ECF No. 2-1 at 7 (citing *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) ("Customer information such as sales history and customer needs and preferences constitute trade secrets.")).)

Second, Plaintiff adequately establishes it took reasonable measures to maintain the secrecy of its proprietary information.  Plaintiff provides evidence that Defendant was bound by an employment agreement and NDA containing strict confidentiality and return-of-property obligations.  (ECF No. 2-1 at 7 (citing ECF No. 2-2 at 8–15).)  Further, Mr. Matthews attests in his declaration that throughout Defendant's employment, Plaintiff maintained Acceptable Use, Data Governance and Classification, and Electronic Communication Retention policies that "(a) restricted sharing and use to authorized business purposes, (b) formally classified the information as 'high and restricted,' (c) prohibited unauthorized deletion or external transfer, and (d) preserved [Plaintiff's] ownership rights regardless of storage location."  (*Id.* (citing ECF No. 2-2 at 3–4).)

Accordingly, Plaintiff has shown its ownership of trade secrets under the DTSA and CUTSA.

### ii.    Misappropriation

Generally, under both the DTSA and CUTSA, "'misappropriation' means either (1) the [a]cquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means; or (2) the [d]isclosure or use of a trade secret of another without express or implied consent." *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1172 (N.D. Cal. 2020) (internal quotations and citations omitted); *Mastronardi Int'l Ltd.*, 2019 WL 3996608, at *9.  With respect to the first description, "improper means" is defined by both the DTSA and CUTSA to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy." *See* 18 U.S.C. § 1839(6)(A); Cal. Civ. Code § 3426.1(a).  With respect to the second description, the statutes specify that "misappropriation" means, "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B)(ii)(III); Cal. Civ. Code § 3426.1(b)(2)(B)(iii).

///

Here, Mr. Matthews attests in his declaration the following:

> In the final days of his employment, [Defendant] downloaded proprietary customer reports to his RMC OneDrive account and copied approximately 3.5 gigabytes of Company data to an external storage device. Matthews Decl. ¶¶ 15–16. He compressed the files into an archive, obscuring their contents and origins, a method commonly associated with concealment rather than routine work activity. Matthews Decl. ¶ 16. Among the downloaded materials were spreadsheets containing customer pricing margins and SSOPs, as well as multiple proprietary reports covering sales performance, revenue, and outstanding orders across numerous customers. Matthews Decl. ¶¶ 16–17. Immediately after completing the transfers, [Defendant] deleted a substantial portion of the files from his RMC OneDrive, impairing audit trails and forensic traceability. Matthews Decl. ¶ 17. [Defendant] separately transmitted highly confidential internal documents, including variable bonus models and sales targets, to his personal Gmail account. Matthews Decl. ¶ 18. [Defendant] had no legitimate business justification for these actions, did not disclose them to [Plaintiff], and never returned the data. The timing and volume of activity were highly unusual compared to his prior usage.

(ECF No. 2-1 at 8 (citing ECF No. 2-2 at 3–4).) The Court finds these statements demonstrate Defendant likely obtained Plaintiff's trade secrets through improper means and without express or implied consent. Accordingly, Plaintiff sufficiently establishes misappropriation under the DTSA and CUTSA.

### iii. Damages

As previously mentioned, the final element of trade secret misappropriation under the DTSA and CUTSA is damage to the plaintiff caused by the defendant's actions. *Mastronardi Int'l Ltd.*, 2019 WL 3996608, at *9. Plaintiff alleges "[a]s a direct and proximate result of Defendant's violation of the DTSA, Plaintiff has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated." (ECF No. 1 at 8.) According to Plaintiff, it "has no assurance that the information [Defendant] downloaded has not been disclosed to CCI or other third parties." (*Id.* at 6.) As previously noted, Plaintiff also alleges Defendant's conduct "creates a substantial risk of customer diversion, price undercutting, replication of RMC's SSOPs and chemical programs, and permanent loss of goodwill." (*Id.*) The Court finds these statements show Plaintiff is likely to be damaged by Defendant's action. Although Plaintiff does not submit evidence that it has suffered damages, the Court nevertheless

finds the potential for imminent damages is significant.  Accordingly, the Court finds Plaintiff adequately establishes damages by Defendant's actions.

In sum, the Court finds Plaintiff sufficiently establishes the elements for trade secret misappropriation claims under the DTSA and CUTSA.

### B.    Irreparable Harm

Irreparable harm may be demonstrated by "the evidence of [Plaintiff's] investment of time and money in the development of the secret processes misappropriated by defendants . . . since harm to [Plaintiff's] competitive position lacks any adequate remedy at law."  *IMI-Tech Corp. v. Gagliani*, 691 F. Supp. 214, 231 (S.D. Cal. 1986).  Plaintiff asserts Defendant "has likely already removed [its] highly sensitive trade secrets" and Plaintiff "has no visibility into where that information is currently stored or whether it has already been disclosed."  (ECF No. 2-1 at 9.)  According to Plaintiff, if Defendant "uses or discloses this information to a competitor, [it] faces immediate price undercutting, loss of customer confidence, replication of [its] SSOP frameworks and chemical programs, and permanent erosion of goodwill."  (*Id.* at 10.)  Plaintiff maintains that monetary damages alone are unable to remedy this harm, as the injuries are "inherently non-quantifiable."  (*Id.*)  Though Plaintiff submits no evidence that Defendant has in fact given this information to a direct competitor, this is unsurprising given that the case is in its infancy.  The Court nevertheless finds the potential for imminent harm is significant.  Accordingly, Plaintiff establishes irreparable harm to its competitive position.

### C.    Balance of Equities

A court balancing the equities will look to possible harm that could befall either party.  *See CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009), *aff'd*, 348 F. App'x 288 (9th Cir. 2009).  The Court agrees with Plaintiff that Defendant will not suffer any undue hardship if the TRO is granted as Plaintiff only seeks an order that he refrain from using Plaintiff's confidential business information, return this information, and preserve and prevent spoliation or destruction of any information he wrongfully took.  (ECF No. 2-1 at 10.)  Conversely, if the Court does not issue a TRO, Plaintiff maintains it risks having its confidential business information disseminated to third parties, including a competitor.  (*Id.*)  The Court finds

the equities weigh heavily in Plaintiff's favor.

D.    Public Interest

Although Plaintiff did not address this factor — and the Court could deny the instant motion for this reason alone — the Court nonetheless finds injunctive relief would be in the public interest.  As courts have found, California has a strong policy in favor of protecting trade secrets.  *See Pyro Spectaculars North, Inc. v. Souza*, 861 F. Supp. 2d 1079, 1092 (E.D. Cal. 2012) (citing *Retirement Group v. Galante*, 176 Cal. App. 4th 1226, 1237 (2009) ("An equally lengthy line of cases has consistently held former employees may not misappropriate the former employer's trade secrets to unfairly compete with the former employer."")).  The Court agrees that injunctive relief to prevent misuse of Plaintiff's trade secretes "would serve the policy of protecting trade secrets while simultaneously allowing lawful competition."  *Id.*

Accordingly, because Plaintiff adequately "make[s] a showing on all four prongs" of the *Winter* test, *Alliance*, 632 F.3d at 1135, the Court GRANTS Plaintiff's motion.

IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Temporary Restraining Order (ECF No. 2) is GRANTED.  The Court further ORDERS as follows:

1.  Defendant and all those acting in concert with him are hereby ORDERED to refrain from:

   a.  Accessing, using, disclosing, disseminating, copying, transmitting, or otherwise misappropriating any of Plaintiff's confidential, proprietary, or trade secret information, in any form and on any medium, including but not limited to pricing margins, customer analytics, standard sanitation operating procedures ("SSOPs"), chemical programs, sales data, and outstanding order information;

   b.  Retaining possession or control of any Plaintiff confidential or proprietary information or materials, whether stored on computers, external storage devices, cloud-based accounts, email accounts, or any other electronic or physical media;

   c.  Destroying, deleting, altering, concealing, or modifying any Plaintiff data, documents, or electronically stored information, including metadata, logs, or audit trails, that relate to Defendant's possession, access, or use of Plaintiff's

9

information;

   d.  Assisting, enabling, or permitting any third party, including any competitor of Plaintiff, to access, use, or benefit from Plaintiff's confidential or proprietary information;

   e.  Interfering with or impairing Plaintiff's ability to recover, inspect, preserve, or forensically analyze its confidential information and systems; and

   f.  Taking any action that would further the disclosure, use, or competitive exploitation of Plaintiff's confidential or trade secret information pending further order of the Court;

2. Defendant is ORDERED to SHOW CAUSE why a preliminary injunction should not issue enjoining Defendant or all those acting in concert with him to refrain from the above-mentioned conduct. Defendant shall file and serve any opposition to the requested preliminary injunction by May 18, 2026. Plaintiff may file a reply, if any, by May 20, 2026; and

3. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

IT IS SO ORDERED.

Date: May 12, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

10