UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCHESTER MIDLAND CORPORATION, | No. 2:26-cv-01776-TLN-CSK |
| Plaintiff, | |
| v. | **ORDER** |
| CHARLES BORDERS, et al., | |
| Defendants. | |

This matter is before the Court on Plaintiff Rochester Midland Corporation's ("Plaintiff" or "RMC") Motion to Modify the Preliminary Injunction ("PI"). (ECF No. 18.) Defendants Charles Borders, Cherokee Chemical, Inc. ("CCI"), and Aaron Stapf ("Stapf") (collectively, "Defendants") filed an opposition.[1] (ECF No. 25.) Plaintiff filed a reply. (ECF No. 26.) For the reasons set forth below, Plaintiff's motion is GRANTED in part and DENIED in part.

///

///

---

[1]    Defendant Gustavo Ocampo ("Ocampo") is also a named defendant in this action but does not join in this opposition. Ocampo was served on June 11, 2026, with the instant motion but has not appeared in this action and has not filed an opposition to the instant motion.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Court need not recount the background facts of this case as they are set forth fully in its May 13, 2026 and June 2, 2026 Orders.  (ECF Nos. 7, 15.)  On June 4, 2026, Plaintiff filed a First Amended Complaint ("FAC"), adding CCI, Stapf, and Gustavo Ocampo ("Ocampo") as defendants.  (ECF No. 16.)  On the same day, Plaintiff filed the instant motion to modify the PI, requesting the Court modify the injunction to (1) apply to all Defendants and (2) restrict Defendants from directly or indirectly using Plaintiff's confidential or trade secret information to contact, solicit, divert, service, or obtain business from any of Plaintiff's customers.  (*See* ECF Nos. 18-1, 18-3.)  On June 18, 2026, Defendants filed an opposition.  (ECF No. 25.)  On June 29, 2026, Plaintiff filed a reply.  (ECF No. 26.)

## II.    STANDARD OF LAW

"The power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible[.]"  *Chatman v. Otani*, No. 21-00268 JAO-KJM, 2021 WL 4892311, at *1 (D. Haw. Aug. 18, 2021) (internal quotation marks omitted) (citing *Brown v. Plata*, 563 U.S. 493, 542 (2011)).  Federal Rule of Civil Procedure ("Rule") 54(b) provides in part that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  "Rule 54(b) reflects a district court's 'inherent jurisdiction to modify, alter, or revoke' its own orders before they become final."  *S.E.C. v. Schooler*, No. 3:12-cv-2164-GPC-JMA, 2013 WL 5308299, at *2 (E.D. Cal. Sept. 19, 2013) (quoting *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2008)).  "A party seeking modification or dissolution of an injunction bears the burden of establishing that significant change in facts or law warrants revision or dissolution of the injunction."  *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000); *see also Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. C 12-2582 CW, 2012 WL 5373377, at *1 (N.D. Cal. Oct. 30, 2012); *Commodity Futures Trading Comm'n v. Bame*, No. CV 08-05593 RGK (PLAx), 2009 WL 10675779, at *2 (C.D. Cal. Jul. 1, 2009) ("A district court generally retains the power to modify or dissolve a preliminary injunction at any time on consideration of

2

new facts." (citing *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002)).

### III.    ANALYSIS

As stated above, Plaintiff requests the Court modify the injunction to (1) apply to all Defendants and (2) restrict Defendants from directly or indirectly using Plaintiff's confidential or trade secret information to contact, solicit, divert, service, or obtain business from any of Plaintiff's customers.  (ECF No. 18-3.)  Plaintiff argues there is newly discovered evidence warranting an amended complaint and modification of injunctive relief.  (ECF No. 18-1 at 7–11, 14–17.)  In opposition, Defendants contend Plaintiff's proposed injunction fails to identify protected information with the specificity Rule 65(d) requires and improperly restrains Defendants from using information that exists only in their memories and operates as a post-employment restraint.  (ECF No. 25 at 6–10.)  Defendants further contend Plaintiff has not shown the proposed restrictions are necessary.  (*Id.* at 11–13.)  The Court will address the parties' arguments in the context of each of Plaintiff's requests to modify the injunction.

### A.    Application to All Defendants

Plaintiff moves for modification of the PI to ensure it fully encompasses individuals and entities "acting in concert with" Borders, as it contends subsequent investigation and evidence obtained after issuance of injunctive relief shows Borders's actions were part of a broader, coordinated scheme involving additional defendants.  (ECF No. 18-1 at 5–6.)  Plaintiff maintains Ocampo and Borders deployed its customer specific pricing in the marketplace to compete directly against Plaintiff, and Stapf engaged in bulk extraction of Plaintiff's proprietary data prior his resignation.  (*Id.* at 10.)  Plaintiff contends the categories of information removed by each defendant is complementary: "Borders accessed and transferred customer reports, pricing data and sales analytics; Stapf accessed territory-based datasets and account-level information; and Ocampo has been observed using customer-specific pricing in the marketplace."  (*Id.* at 8–9.)  In opposition, Defendants argue Plaintiff has not shown why modification is necessary, as Ocampo and Stapf are already covered by the injunction as individuals who allegedly acted "in concert" with Borders.  (ECF No. 25 at 11.)  Defendants also argue Plaintiff's motion relies on speculation rather than new evidence.  (*Id.*)

3

The Court finds Plaintiff has provided substantial newly-acquired evidence warranting modification of the injunction to specifically cover Ocampo and Stapf.  Although Plaintiff claims Defendants have acted in coordination, modification is needed to prevent any independent misappropriation in the future.  The Court will address the parties' arguments with respect to Ocampo and Stapf in turn.

<i>i.      Ocampo</i>

Plaintiff asserts that in mid-April 2026, shortly after joining CCI, Ocampo sent one of Plaintiff's current customers a written quotation that included a side-by-side comparison of CCI's pricing and Plaintiff's pricing for the same customer.  (ECF No. 18-1 at 7.)  Plaintiff maintains this pricing information is not publicly available and is maintained as confidential within its systems, and therefore the inclusion of this information and its use in the marketplace shows Ocampo retained and used Plaintiff's proprietary data after his departure.  (*Id.*)

Defendants argue this conduct, accepting Plaintiff's allegations at face value, concerns Ocampo's actions and do not establish Borders, Stapf, or CCI engaged in misuse of Plaintiff's trade secrets.  (ECF No. 25 at 13.)  Defendants maintain that Ocampo is no longer employed by CCI and therefore any alleged conduct by Ocampo cannot serve as a basis for imposing broader restrictions on CCI, Borders, and Stapf, especially since Plaintiff has not produced evidence that CCI received, used, or benefited from any purportedly confidential information.  (*Id.* at 13–14.)

The Court finds persuasive Plaintiff's argument that Defendants' response to this evidence is not to dispute that it occurred — tellingly, they do not offer any explanation for the side-by-side comparison, no alternative source for the pricing information, and no evidence that the benefits of this conduct ended when Ocampo left CCI.  (ECF No. 26 at 5–6.)  Indeed, Plaintiff's Vice President of Corporate Development, Robert Matthews, avers in a declaration that a principal of one of Plaintiff's existing customers provided Plaintiff with correspondence that shows "on or about April 14, 2026, Ocampo transmitted to a current RMC customer a written quotation that included a side-by-side comparison of Defendant CCI's pricing and RMC's existing pricing for that same customer."  (ECF No. 18-2 at 2.)  According to Matthews, "the correspondence also showed a side-by-side product comparison of RMC products and

4

replacement CCI products" and "occurred within a matter of days after Ocampo's employment at RMC ended." (*Id.*)  Matthews states that Plaintiff is awaiting the results of a forensic investigation of Ocampo's RMC-issued laptop.  (*Id.*)  Matthews believes this side-by-side comparison reflects actual deployment of Plaintiff's trade secrets in the marketplace targeting its existing customers and undercutting its pricing.  (*Id.*)  This Court has already recognized that customer-specific pricing information and sales information constitute trade secrets.  (ECF No. 7 at 5.)

Joseph Graffius, the Vice President of Business Development for CCI, attests in a declaration that CCI did not hire Ocampo to obtain Plaintiff's information and expressly instructed Ocampo not to bring, retain, copy, disclose, or use any confidential, proprietary, or trade-secret information belonging to any prior employer.  (ECF No. 25-3 at 3–4.)  Again, however, Defendants do not dispute that Ocampo transmitted this information to one of Plaintiff's customers.  Courts have noted that "direct evidence of misappropriation is rare, and courts rely on circumstantial evidence and inferences drawn from conduct."  *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 848 (N.D. Cal. Apr. 1, 2019).  Even though Plaintiff does not have direct evidence Ocampo misappropriated its trade-secret information, the fact that a customer told Plaintiff it received an email from Ocampo with Plaintiff's pricing information is sufficient to establish Ocampo likely obtained Plaintiff's trade secrets through improper means and without express or implied consent.  *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1172 (N.D. Cal. 2020) (noting that under the Defend Trade Secrets Act and California Uniform Trade Secrets Act, "misappropriation" means "either (1) the [a]cquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means; or (2) the [d]isclosure or use of a trade secret of another without express or implied consent").  Accordingly, with respect to Ocampo, Plaintiff meets its burden to establish a "significant change in facts" warrants revision of the injunction.  *Sharp*, 233 F.3d at 1170.

ii.   Stapf

Plaintiff asserts that on April 30, 2026, Stapf had a spike in file-access activity involving large volumes of customer-related data and connected multiple external USB storage devices.

5

(ECF No. 18-1 at 7.)  Plaintiff maintains these devices contain directories labeled "1 LA Territory" and "1 Closed Accounts," which correspond to Plaintiff's structured datasets and are consistent with exports of customer lists, customer-specific pricing information, contractual agreements, and account-level revenue and service program data.  (*Id.* at 8.)

Defendants argue Stapf gathered materials from Plaintiff's systems at the request of one of Plaintiff's customers (Latitude 36) in late April 2026, and copied them onto a flash drive for delivery.  (ECF No. 25 at 12.)  According to Defendants, Stapf hand-delivered the flash drive directly to Latitude 36, did not retain it, provide it to CCI, or use any materials on the drive after he left — this "bulk extraction" was ordinary performance of his duties on a customer's behalf. (*Id.*)

Defendants' explanation does not account for the fact there was high-volume access, repeated USB device connections, and structured directories corresponding to Plaintiff's datasets. (ECF No. 26 at 6–7.)  Indeed, courts have found employees' deliberate transference of large quantities of electronic information to external drives either right before or shortly after leaving a company for its direct competitor "gives rise to a reasonable inference that [these employees] intended to use this information to benefit their new employer."  *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 444 F. Supp. 3d 1198, 1209 (E.D. Cal. 2020) (citing *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 2123560, at *11 (N.D. Cal. May 15, 2017)).  Defendants did not offer any explanation as to why territory-level and closed-account datasets appeared on the connected devices if it was genuinely nothing more than gathering audit materials for Latitude 36.  Matthews also attests in his declaration that multiple USB devices were connected in rapid succession prior to Stapf's resignation and Defendants similarly fail to explain why.  (ECF No. 18-2 at 2.)  Finally, Stapf does not dispute business-related files were deleted around his resignation but instead states departing employees often removed personal materials from company laptops.  (ECF No. 25-2 at 4.)  However, Stapf does not identify what files were deleted.  As the Court found previously, "pre-departure deletion of company data, particularly when intertwined with undisputed transfer activity, supports an inference of spoliation and a finding that the full scope of misappropriation cannot be reliably determined."  (ECF No. 15 at 8

((citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)).)  The foregoing is sufficient to establish Stapf likely obtained Plaintiff's trade secrets through improper means and without express or implied consent.  *Arthur J. Gallagher & Co.*, 498 F. Supp. 3d at 1172.  Accordingly, with respect to Stapf, Plaintiff meets its burden to establish a "significant change in facts" warrants revision of the injunction.  *Sharp*, 233 F.3d at 1170.

> B.    Restriction on Defendants Directly or Indirectly Using Plaintiff's
> Confidential or Trade Secret Information

Defendants argue Plaintiff's proposed injunction language fails to identify the protected information with the specificity required by Rule 65(b), citing to several cases where courts vacated injunctions where the injunction did not clearly define what conduct was prohibited. (ECF No. 25 at 6–8 (citing *Union Pac. R. Co. v. Mower*, 219 F.3d 1069, 1077 (9th Cir. 2000); *Del Webb Communities, Inc. v. Partington*, 652 F.3d 1145 (9th Cir. 2011); *Carl Zeiss Meditec, Inc. v. Topcon Medical Sys., Inc.*, No. 2021-1839, 2021 WL 1530491 (Fed. Cir. May 16, 2022)).) Defendants express concern that the operative terms "directly or indirectly" and "confidential or trade secret information" in proposed paragraphs (g) and (h) are undefined and that Plaintiff's description of its alleged trade secrets is expanding (as the original TRO covered pricing information, SSOPs, chemical programs, and sales reports, but the instant motion invokes customer pricing, contracts, account structures, customer relationships, operational data, territory information, service-program data, and other broad categories of business information).  (*Id.* at 7– 10.)  Defendants contend the proposed modification also prohibits them from using their own knowledge, experience, and memory and functions as a post-employment restraint.  (*Id.* at 8–9 (citing *IKON Office Sol'ns, Inc. v. American Office Prods., Inc.*, 178 F. Supp. 2d 1154 (D. Or. 2001); *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1463–64 (2002)).)

In reply, Plaintiff contends these arguments are unpersuasive because the Court has already completed the work Rule 65 requires and expressly identified the categories of information that likely constitute its trade secrets — customer pricing, margins, SSOPs, chemical programs, customer-specific information, sales analytics, revenue reports, customer decisionmaker information, and outstanding order data.  (ECF No. 26 at 8.)  Plaintiff maintains

the proposed modification targets the same categories of information and does not expand the universe of protected information, create new restrictions, or prohibit lawful competition. (*Id.*)

As many courts have noted, "[t]he benchmark for clarity and fair notice is not lawyers and judges, who are schooled in the nuances of [the] law, but instead the lay person, who is the target of the injunction." *Del Webb*, 652 F.3d at 1150 (internal quotations omitted) (quoting *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006)). Indeed, the requirements for specificity in Rule 65(d) are not merely technical requirements, as Rule 65(d) "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).

Here, the Court finds the terms "directly or indirectly" in proposed paragraphs (a), (g), and (h) fail to sufficiently define what conduct is covered by the injunction. (*See* ECF No. 18-3 at 2–3.) The Court agrees with Defendants that those terms are similar to terms other courts have found to be impermissibly vague, as they are undefined and would likely leave Defendants to speculate what kind of conduct is prohibited. (ECF No. 25 at 7); *see Del Webb*, 652 F.3d at 1150 (vacating a broad prohibition against "soliciting and/or performing residential inspections and/or providing inspection reports . . . by means of illegal, unlicensed and false practices," as it failed to sufficiently define what additional future conduct was covered); *Carl Zeiss*, 2022 WL 1530491, at *1 (finding the broad prohibition against using "any CZMI confidential, proprietary, or trade secret information, including any files obtained from the Hard Drive or during the course of [f]ormer [d]efendants' employment with CZMI" failed to sufficiently identify the specific trade secrets or prohibited acts). The Court also agrees that Plaintiff does not explain what constitutes indirect or direct use and therefore the proposed language "provides no meaningful standard by which Defendants could conform their conduct." (ECF No. 25 at 10.)

With respect to the term "confidential information," however, the Court disagrees with Defendants that the instant case is like the cases they cite and that this injunction operates as a post-employment restraint. *See IKON Office Sol'ns, Inc.*, 178 F. Supp. 2d at 1169–70 (analyzing a misappropriation of trade secrets claim on summary judgment and finding "no evidence that

8

any documents were taken, only what is in defendants' minds"); *Whyte*, 101 Cal. App. 4th at 1463–64 (noting that prohibiting an employer to enjoin a former employee — without proof of employee's actual or threatened use of trade secrets — from using knowledge of those trade secrets in new employment is not an injunction "against the use of trade secrets, but an injunction restricting employment").  These cases are distinguishable because Plaintiff has provided evidence of use of its trade secrets in the marketplace (*see* ECF No. 18-2 at 2) and has specifically defined categories of "confidential information" that the Court has incorporated into the current injunction (namely, "pricing margins, customer analytics, standard sanitation operating procedures ('SSOPs'), chemical programs, sales data, and outstanding order information"), instead of stating "confidential information" generally (ECF No. 18-3 at 2).

Lastly, the Court agrees with Defendants that Plaintiff's description of its alleged trade secrets is expanding, as the new proposed language now includes customer-specific pricing, contracts, and purchasing history.  (ECF No. 18-3 at 3.)  However, Plaintiff provides evidence of customer-specific pricing in the marketplace (ECF No. 18-2 at 2) and cites to case law to support its contention that courts have recognized these categories of information as trade secrets.  *See Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) ("Customer information such as sales history and customer needs and preferences constitute trade secrets.").  The Court agrees these categories of information constitute trade secrets.  Accordingly, the Court shall incorporate this new language into the injunction.

### IV.   CONCLUSION

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part Plaintiff's Motion to Modify the Preliminary Injunction.  (ECF No. 18.)  The Court ORDERS as follows:

1. The Preliminary Injunction applies to Defendants Charles Borders, Gustavo Ocampo, Aaron Stapf, Cherokee Chemical, Inc., and to all other persons or entities acting in concert or participation with any Defendant who receive actual notice of this Order; and

2. Defendants, and each of them, and all persons acting in concert with or participation with them who receive actual notice of this Order, are hereby ORDERED to refrain from:

   a.  Accessing, using, disclosing, disseminating, copying, transmitting, or otherwise misappropriating any of Plaintiff's confidential, proprietary, or trade secret information, in any form and on any medium, including but not limited to pricing margins, customer analytics, standard sanitation operating procedures ("SSOPs"), chemical programs, sales data, and outstanding order information;

   b.  Retaining possession or control of any Plaintiff confidential or proprietary information or materials, whether stored on computers, external storage devices, cloud-based accounts, email accounts, or any other electronic or physical media;

   c.  Destroying, deleting, altering, concealing, or modifying any Plaintiff data, documents, or electronically stored information, including metadata, logs, or audit trails, that relate to Defendant's possession, access, or use of Plaintiff's information;

   d.  Assisting, enabling, or permitting any third party, including any competitor of Plaintiff, to access, use, or benefit from Plaintiff's confidential or proprietary information;

   e.  Interfering with or impairing Plaintiff's ability to recover, inspect, preserve, or forensically analyze its confidential information and systems;

   f.  Taking any action that would further the disclosure, use, or competitive exploitation of Plaintiff's confidential or trade secret information pending further order of the Court;

   g.  Using Plaintiff's confidential or trade secret information to contact, solicit, divert, service, or obtain business from any customer of Plaintiff, including through the use of customer-specific pricing, contracts, purchasing history, or other proprietary information; and

   h.  Using Plaintiff's confidential or trade secret information to contact, solicit, divert, service, or obtain business with any current customer of Plaintiff.

As Gustavo Ocampo has not appeared in this action and did not file an opposition to the instant motion, Plaintiff is ORDERED to serve Ocampo with a copy of this Order within two

10

days.  Ocampo may seek relief from the preliminary injunction as appropriate.

Finally, the Court DENIES Defendants' request for oral argument on the instant motion. (ECF No. 28.)

IT IS SO ORDERED.

Date: July 6, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

11